UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN NANBERG and<br>SNNG ENTERPRISES, INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 21 C 6623<br>)<br>) Judge Rebecca R. Pallmeyer |
| 21st CENTURY FLOORING, LLC, and<br>EMPIRE TODAY, LLC, | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Steven Nanberg and SNNG Enterprises, Inc. filed this lawsuit against Defendants 21st Century Flooring, LLC and Empire Today, LLC and alleging various federal and state claims arising out of the parties' years-long work relationship. Defendants have moved under § 3 of the Federal Arbitration Act (FAA), 9 U.S.C. § 3, to dismiss or stay the case pending arbitration of Plaintiffs' claims. For the following reasons, Defendants' motion [8] is granted.

## BACKGRUOND

Plaintiff Nanberg allegedly began working as a salesperson for Defendant Empire Today in 2001. (*See* Compl., Ex. A to Notice of Removal [1-1] (hereinafter "Compl.") ¶ 7.) In 2008, he left that position for a similar sales role with Defendant 21st Century Flooring, which was then purchased by Empire Today in 2012. (*Id.* ¶¶ 9, 11.) In this lawsuit, Plaintiffs Nanberg and SNNG Enterprises, Inc., a corporation he owns, assert various federal- and state-law claims arising from alleged "wrongful conduct, fraud and discrimination" by Defendants and their agents. (*Id.* ¶¶ 1, 5, 68–99.) In December 2021, Defendants removed the case to this court on the basis of federal-question and supplemental jurisdiction, 28 U.S.C §§ 1331, 1367. (Notice of Removal [1] ¶¶ 1–4.) After removing the case, Defendants filed a motion to dismiss or stay the case pending arbitration. (*See* Defs.' Mot. [8].)

Two exhibits are central to Defendants' motion: an arbitration agreement introduced by Defendants and an affidavit from Plaintiff Nanberg. The court discusses these documents in turn.

## I.   Arbitration Agreement

Defendants' motion is premised on an arbitration agreement dated February 21, 2014 (the "Arbitration Agreement"). (*See* Arbitration Agreement, Ex. A to Defs.' Mem. [9-1] at 4.)

### A.   Parties

The Arbitration Agreement is, by its terms, an agreement between (1) a signatory, who Defendants have identified as Plaintiff Nanberg, and the signatory's "heirs, administrators, executors, successors and assigns," and (2) "the Company," which the Arbitration Agreement defines as "21st Century Sales, LLC, its parents, affiliates, subsidiaries, divisions, successors, assigns and their current and former employees, officers, directors, and agents." (*See* Arbitration Agreement at 1, 4.)

The two Plaintiffs in this case are Nanberg and SNNG Enterprises, Inc., a corporation he owns. Plaintiffs allege that Nanberg incorporated SNNG "[a]t the Defendants' insistence," apparently for the purpose of receiving commissions. (*See id.* ¶¶ 1, 60.) Although SNNG is not mentioned in the Arbitration Agreement, the parties treat Nanberg and SNNG as one unit. The court follows their lead and assumes that SNNG Enterprises is bound by the Arbitration Agreement to the same extent Nanberg is.

Nanberg's name is not typewritten on the Arbitration Agreement, but the document appears to be signed. (*See* Arbitration Agreement at 4.) The signature is illegible, but Defendants assert—and Nanberg has admitted—that it is his. (*See id.*; Aff. of Steven Nanberg, Ex. to Pls.' Resp. [11-1] (hereinafter "Nanberg Aff.") ¶¶ 8, 14 (stating that he "did sign the last page" of "the document filed in this action as Exhibit A to" Defendants' motion).) That admission establishes that Plaintiffs are parties to the Arbitration Agreement.[1]

---

[1] In a footnote to their brief, Plaintiffs offhandedly note that Defendants' motion "does not include any authentication of the Arbitration Agreement." (Pls.' Resp. at 1 n.1.) True,

The two Defendants in this case are 21st Century Flooring and Empire Today. Although neither is mentioned in the Arbitration Agreement by name, Defendants assert that they are parties to the contract because they are "affiliates" of 21st Century Sales, the entity that is expressly named. (Defs.' Mem. at 1 n.1; *see also* Arbitration Agreement at 1 (defining "the Company" to include "affiliates" of 21st Century Sales).) Plaintiffs do not dispute this contention that Defendants are affiliates of 21st Century Sales. The court therefore concludes that the Arbitration Agreement is a contract between the parties to this case.

B. **Terms**

Under the Arbitration Agreement, the parties "agree . . . to arbitrate covered disputes, in lieu of litigating in court." (Arbitration Agreement at 1.) This agreement covers a broad range of disputes, including claims brought under several specific statutes as well as claims under "any other federal, state, or local law, ordinance or regulation, or based on any public policy, contract, tort, or common law or any claim for costs, fees, or other expenses or relief, including attorney's fees." (*Id.* § A.)

The Arbitration Agreement also contains a provision delegating broad authority to the arbitrator:

> The Arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to[,] any claim that all or any part of this Agreement is void or voidable . . . .

(*Id.* § C.)[2] And the Arbitration Agreement incorporates the rules of the American Arbitration Association ("AAA"). For example, it provides that "[a]ny request to arbitrate pursuant to this

---

Defendants did not introduce the document by way of affidavit or declaration. But Plaintiff Nanberg's own affidavit describes, in great detail, the circumstances under which he signed the Arbitration Agreement, and he identified the document's signature as his own. (*See* Nanberg Aff. ¶¶ 8, 14.) Plaintiffs have therefore forfeited any argument that the document is inauthentic.

[2] This delegation provision contains an exception for class actions, but that exception is not relevant to this case. (*See* Def.'s Mem. at 3 n.3.)

Agreement must be submitted in writing to the AAA"; "[t]he arbitration shall be arbitrated by a single arbitrator in accordance with the Commercial Arbitration Rules" of the AAA; and various types of fees "shall be borne by the parties in accordance with" AAA rules. (*Id.* § D.)

## II. Affidavit

As part of their response to Defendants' motion, Plaintiffs have submitted an affidavit from Nanberg describing the circumstances under which he signed the Arbitration Agreement. (*See* Nanberg Aff.)

Nanberg was diagnosed with multiple sclerosis (MS) in 2012. (*Id.* ¶ 5.) As a result, he experienced "dizziness, fatigue and cognitive problems," including "inability to focus." (*Id.*) Nanberg also says that he was "unable to read lengthy documents" because "print appeared blurry." (*Id.*) Despite these vision and cognitive issues, Nanberg says he was able to perform his job adequately using tablets that his company, a subsidiary of Defendant Empire Today, provided to sales representatives. (*Id.* ¶¶ 4–5.)

On February 21, 2014, some two years after his MS diagnosis, Nanberg and other sales associates attended a meeting at the company's office. (*Id.* ¶ 8.) According to Nanberg, company managers "gave each of us papers and directed us to sign and return the papers to them, or else we could not return to work." (*Id.*) Those documents included the Arbitration Agreement. (*Id.*) The sales associates were given no opportunity to consult lawyers, nor were they allowed to make copies on the office copier. (*Id.* ¶ 9.) Due to the symptoms of MS, Nanberg was "unable to read the papers" handed to him. (*Id.* ¶ 11.) When Nanberg told one of his managers that he could not read the print on the pages, and "asked for help" to do so, the manager replied that Nanberg "had no choice" but to sign the document if he wanted to continue working. (*Id.* ¶¶ 10, 12.) Nanberg reports that he was "fearful," "panicking" about his ability to provide for his family, and unable to "think straight." (*Id.* ¶ 13.)

Although Nanberg eventually signed the papers, he asserts that he "did not read" them, "did not know the content[s]," "did not know that the papers contained an arbitration agreement," and was given no copies. (*Id.* ¶¶ 14, 17.)

## DISCUSSION

Citing the Arbitration Agreement, Defendants have asked the court to dismiss or stay this case pending arbitration of Plaintiffs' claims. (Defs.' Mem. [9] at 3.) Plaintiffs oppose the request. Although they concede that the Arbitration Agreement calls for the arbitration of their claims, they urge the court to find that the contract is unenforceable because it is procedurally and substantively unconscionable.[3] (Pls.' Resp. [11] at 4–5.) As Defendants explain in their reply, however, the court need not, and indeed cannot, determine whether the Arbitration Agreement is unconscionable. Because the Arbitration Agreement gives an arbitrator exclusive authority to decide this threshold issue, the court concludes that Plaintiffs must present the defense in that forum. (Defs.' Reply [12] at 2–4.)

Section 2 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, provides as follows:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This language reflects "the fundamental principle that arbitration is a matter of contract." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). A second principle naturally follows from the first: "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475

---

[3] Plaintiffs also suggest that enforcing the Arbitration Agreement would violate Illinois public policy. (Pls.' Resp. at 12–13.) They rely exclusively on the Workplace Transparency Act of 2019, which disfavors, as a matter of public policy, any arbitration agreements imposed on employees as a unilateral condition of employment. *See* 820 ILCS 96/1-25(b). As Plaintiffs themselves point out, however, the statute expressly states that it applies only to contracts "entered into, modified, or extended on or after" January 1, 2020. 820 ILCS 96/1-10(c).

U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

By default, the determination of whether the parties agreed to arbitrate a particular claim is decided by the court, not an arbitrator. *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 457–58 (N.D. Ill. 2021) (citing *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013)). But the FAA allows parties to contract around this default presumption and instead have an arbitrator decide "gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010)). So long as there is "clear and unmistakable" evidence of the parties' intent to delegate such decision-making authority over gateway issues, a court must abstain from deciding the issues itself. *Id.* at 530 (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Courts have identified two main types of "clear and unmistakable" evidence of the parties' intent to delegate gateway authority to an arbitrator: (1) the contract's inclusion of "robust delegation clause," and (2) the contract's incorporation of American Arbitration Association rules. *See Nandorf, Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 410 F. Supp. 3d 882, 888 (N.D. Ill. 2019).

Plaintiffs do not dispute that the Arbitration Agreement contains both these signals of the parties' intent to delegate, nor could they reasonably dispute that fact. First, the Arbitration Agreement contains a delegation provision that grants an arbitrator "exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to[,] any claim that all or any part of this Agreement is void or voidable." (Arbitration Agreement § C.) This language constitutes a "robust" delegation. *See, e.g., Rent-A-Center*, 561 U.S. at 66, 71–72 (discussing and enforcing identical language); *Johnson v. W. & S. Life Ins. Co.*, 598 F. App'x 454, 455–56 (7th Cir. 2015) (similar). And, as

6

relevant here, the delegation encompasses Plaintiffs' defense of unconscionability, as that doctrine concerns the "enforceability" of a contract. *See Phoenix Ins. Co. v. Rosen*, 242 Ill. 2d 48, 59–60, 949 N.E.2d 639, 647–48 (2011) ("[U]nconscionability analysis asks whether the agreement, by its formation or by its terms, is so unfair that the court cannot enforce it consistent with the interests of justice."); 17A AM. JUR. 2D *Contracts* § 271 (2022) ("[A]n unconscionable contract is unenforceable . . . .").

Second, the Arbitration Agreement incorporates various AAA rules. (*See* Arbitration Agreement § D*.*) Critically, those include Rule 7(A) of the AAA's Commercial Rules, which "empowers an arbitrator to decide gateway arbitrability issues, such as validity and scope of arbitration." *Nandorf*, 410 F. Supp. 3d at 888. Although the Seventh Circuit has not weighed in on this issue, the consensus view is that incorporation of the AAA rules suffices to delegate arbitrability questions. *See id.* (collecting cases); *Sha-Poppin Gourmet Popcorn LLC*, 553 F. Supp. 3d at 458–59.

Plaintiffs do not engage with these points. Instead, they simply argue that the Arbitration Agreement's alleged unconscionability is *not*, in fact, a gateway issue that is susceptible to decision by an arbitrator. After all, they say, their theory is that the entire Arbitration Agreement is unenforceable because it is unconscionable. To conclude that Plaintiffs have contractually delegated the authority to adjudicate this very issue would put the cart before the horse, Plaintiffs contend, by enforcing a contract whose enforceability has been put in dispute.

Though not unreasonable, Plaintiffs' theory has been foreclosed by the Supreme Court. In *Rent-A-Center*, the Court explained that § 2 of the FAA "operates on the specific 'written provision' to 'settle by arbitration a controversy' that the party seeks to enforce." *Rent-A-Center*, 561 U.S. at 72 (quoting 9 U.S.C. § 2). Here, as in *Rent-A-Center*, the relevant "written provision" is the Arbitration Agreement's specific *delegation* provision—not the remainder of the contract, from which the delegation provision is analytically severable. Absent a challenge to the validity of the "the delegation provision *specifically*," the court must "treat it as valid under § 2, and must

7

enforce it under [§ 3], leaving any challenge to the validity of the [a]greement as a whole for the arbitrator." *Id.* (emphasis added); *see also Johnson*, 598 F. App'x at 455–56 (similar).

Plaintiffs have not challenged the delegation provision specifically. Instead, every aspect of their unconscionability theory concerns the terms of the Arbitration Agreement, and the circumstances in which the contract was entered, as a whole. Take, for example, Plaintiffs' arguments for why the Arbitration Agreement is procedurally unconscionable. Plaintiffs say that Nanberg was presented with the contract (1) without advance notice; (2) on a take-it-or-leave-it basis; (3) under threat of losing his job; (4) without the ability to consult a lawyer or copy the document; and (5) despite the vision and cognitive limitations imposed by his MS. (Pls.' Resp. at 5–8.) None of these five issues is directed specifically at the delegation provision. *See Rent-A-Center*, 561 U.S. at 72–74.

The substantive-unconscionability theory fares no better under the *Rent-A-Center* rule. Plaintiffs argue that the Arbitration Agreement favors Defendants to an oppressive degree because it (1) unreasonably shortens the limitations period applicable to Plaintiffs' claims; (2) recites "one-sided" consideration, given that "only the company wanted" to arbitrate; (3) provides for an abridged discovery process; and (4) fails to state expressly that the AAA rules, which the Arbitration Agreement incorporates by reference, require both sides to pay the arbitrator's fees and costs. (Pls.' Resp. at 8–12.) None of these four items is directed specifically at the delegation provision. *See Rent-A-Center*, 561 U.S. at 72–74.

Again, Plaintiffs never engage with *Rent-A-Center*. Instead, they merely insist that the court, not an arbitrator, must "determine whether a valid agreement to arbitrate exists." (Pls.' Resp. at 4.) This statement is technically correct, but Plaintiffs misapply the rule.

As the Seventh Circuit explained recently in *K.F.C. v. Snap, Inc.*, "judges must decide that a contract has been formed before they may order arbitration." *K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022); *accord Janiga v. Questar Cap. Corp.*, 615 F.3d 735, 742 (7th Cir. 2010) ("The court must decide whether a contract exists before it decides whether to stay an action and order

8

arbitration."). The reasons for this threshold requirement are obvious: "Even the most sweeping delegation cannot send the contract-*formation* issue to the arbitrator, because, until the court rules that a contract exists, there is simply no agreement to arbitrate." *K.F.C.*, 29 F.4th at 837 (emphasis added). The problem for Plaintiffs is that they conflate the question of contract formation—which they do not meaningfully dispute here—with the question of contract enforceability.

The question of contract formation is governed by state law. *Janiga*, 615 F.3d at 742 (citing *First Options*, 514 U.S. at 944). In Illinois, "it is the objective manifestation of intent that controls whether a contract has been formed." *Urb. Sites of Chi., LLC v. Crown Castle USA*, 2012 IL App (1st) 111880, ¶ 51, 979 N.E.2d 480, 496. And courts generally hold that a party's "signature on the required pages objectively indicates his assent to the entire contract." *Zhan v. Hogan*, No. 18 C 4126, 2018 WL 9877970, at *8 (C.D. Ill. Dec. 18, 2018) (collecting cases). As discussed above, Nanberg concedes that he signed the Arbitration Agreement. (*See* Nanberg Aff. ¶¶ 8, 14 (stating that he "did sign the last page" of "the document filed in this action as Exhibit A to" Defendants' motion).) That admission, together with the Arbitration Agreement itself, provides enough evidence to conclude that the parties formed a contract. *See, e.g.*, *Janiga*, 615 F.3d and 742 (finding similarly where the plaintiff signed a contract but argued that "he did not get a copy of the contract, he never read it, he could not read it if he tried, and he did not know what he agreed to do").

Plaintiffs argue forcefully that Nanberg did not fully *understand* the Arbitration Agreement because he could not read it properly. And they argue that other aspects of the Arbitration Agreement, and the circumstances in which it was signed, would make it fundamentally unfair to enforce. But as these arguments have been presented, they go to the enforceability of the Arbitration Agreement—not to its formation. *See e.g.*, *Janiga*, 615 F.3d and 742; *cf.* 8 WILLISTON ON CONTRACTS § 18:1 (4th ed. 2022) ("[U]nconscionable agreements may be said to be voidable or unenforceable by the party imposed upon, but not void.").

9

Plaintiffs have not refuted the fact that Nanberg objectively manifested his assent to the Arbitration Agreement. Because the parties entered a valid arbitration agreement, and it contains clear and unmistakable evidence of their intent to grant an arbitrator exclusive decision-making authority over issues including Plaintiffs' unconscionability defense, the court must enforce the agreement under the FAA. *See K.F.C.*, 29 F.4th at 837 ("[I]f there is a contract, then an arbitration clause may delegate all other issues, including defenses, to the arbitrator."); *Henry Schein*, 139 S. Ct. at 528 ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract."); *cf. Janiga*, 615 F.3d at 742 (noting, on similar facts, that unconscionability was a question of enforceability that was "squarely in the arbitrator's box").

## CONCLUSION

For the foregoing reasons, the court grants Defendants' motion [8]. This case is stayed pending arbitration. The parties are directed to submit a written status report by December 2, 2022.

ENTER:

Dated: September 27, 2022

_____
REBECCA R. PALLMEYER
United States District Judge